IN THE UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| ETON EMETOM | § | |
| *(Plaintiff)* | § | |
| VS | § | |
| | § | Civil Action # 1:25-CV-01166 |
| WILLIAMSON COUNTY, TEXAS | § | |
| SHERIFF MATTHEW LINDEMANN | | |
| SERGEANT JAMES BRIGGS. | | |
| SERGEANT TYLER  NAVARRO | | |
| SERGEANT JAMES POLK | | |
| SERGEANT TREVONE JOHNSON | | |
| SERGEANT CASE WINKLER | | |
| SERGEANT BRYSON MORA | | |
| *(Defendants)* | | |

## FIRST AMENDED COMPLAINT

**TO THE HONORABLE UNITED STATES DISTRICT COURT:**

COMES NOW Plaintiff, Eton Emetom, Plaintiff, files this complaint pursuant to 42 U.S.C §
1983, complaining of Williamson County Texas, Matthew Lindemann, James Briggs, Tyler
Navarro, James Polk, Trevone Johnson, Case Winkler, and Bryson Mora for causes of action
will respectfully show unto the Court as follows:

If there is a reckless disregard for human life and safety prevalent among the city's police
officers which threatens the life and security of those whom they encounter, and if that
recklessness is attributable to the instruction or example or acceptance of or by the city
policymaker, the policy itself is a repudiation of constitutional rights.
*Grandstaff v. City of Borger, Tex.*, 767 F.2d 161, 170 (5th Cir. 1985).

# I. INTRODUCTION

This is an action for damages, declaratory, and injunctive relief brought pursuant to 42 U.S.C § 1983 and 1988, the Fourth and Fourteenth Amendments to the United States Constitution and under the law of the State of Texas, against Williamson County Texas, Sheriff Matthew Lindemann, Sergeant James Briggs, Sergeant Tyler Navarro, Sergeant James Polk, Sergeant Trevone Johnson, Sergeant Case Winkler, and Sergeant Bryson Mora, police officers of Williamson County, all in their individual and official capacity.

Plaintiff Eton Emetom alleges that Defendants violated his constitutional rights and used excessive force when Williamson County deputies were acting under color of law when they deprived him of his rights when they made an unreasonable search and seizure of his person and private property without consent or warrant, assaulted, battered, and falsely imprisoned him by stopping him, threatening to arrest him, and physically restraining him without cause. Plaintiff alleges that these violations were committed as a result of policies and customs of Williamson County Sheriffs Dept. and that Williamson County is liable under the theory of respondent superior for the torts committed by the Defendants Williamson County Texas, Sheriff Matthew Lindemann, Sergeant James Briggs, Sergeant Tyler Navarro, Sergeant James Polk, Sergeant Trevone Johnson, Sergeant Case Winkler, and Sergeant Bryson Mora.

# II. PARTIES

1. Plaintiff Eton Emetom date of birth 08/01/1990 was 34 years old and at all times relevant hereto was an adult citizen of the United States living at a house located in the City of Austin, Texas. Mr. Emetom is a father and a small business owner. Mr. Emetom is African American. Mr Emetom suffered severely on December 15, 2024 as a result of the Defendants unlawful conduct as alleged herein.

2. Defendant Williamson County, Texas is a governmental entity in Texas. It may be served through its County Judge, Bill Gravell, Jr., at 710 S. Main St. #101, Georgetown,

TX 78262. At all times relevant to this Complaint, Williamson County, through its policymakers including the Sheriff maintained customs, policies, and practices that were the moving force behind the constitutional violations described herein. These include, but are not limited to, the failure to adequately train, supervise, and discipline deputies with regard to lawful searches and seizures, the use of force, and the protection of individual constitutional rights. Williamson County is sued under 42 U.S.C. § 1983 for maintaining or permitting an official policy, practice, or custom that caused the deprivation of Plaintiff's rights under the Fourth and Fourteenth Amendments to the United States Constitution.

3. Defendant Matthew Lindemann, serves as the Chief law enforcement officer for Williamson County Sheriffs department . He was acting under color of state law and in his capacity as an agent, policymaker, and final decision-maker for the Williamson County Sheriff's Office. Sheriff Lindemann is responsible for the hiring, training, supervision, discipline, and conduct of deputies within the department. He is sued in both his individual and official capacities for his failure to properly supervise, train, and discipline deputies, and for allowing or condoning the unconstitutional policies, customs, and practices that led to the violations alleged herein. He may be served with process at the Williamson County Sheriff's Office, 508 South Rock St., Georgetown, TX 78626, or wherever he may be found.

4. Defendant James Briggs was, at all times relevant, a Supervisor and/or Sergeant with the Williamson County Sheriff's Office, acting under color of state law. As the supervising officer on scene, Defendant Briggs had the authority and opportunity to prevent or stop the unlawful actions of Defendant Navarro and other deputies, but failed to intervene. He directly participated in the continued detention and violation of Plaintiff's constitutional rights and allowed the unlawful search and seizure to occur under his supervision. Defendant Briggs's deliberate indifference, failure to act, and implicit approval of the misconduct contributed to the violation of Plaintiff's rights under the Fourth and Fourteenth Amendments.

He failed to take the reasonable steps to end the unlawful conduct alleged in this complaint. He is sued in both his individual and official capacities. He may be served with process at the Williamson County Sheriff's Office, 508 South Rock St., Georgetown, TX 78626, or wherever he may be found.

5. Defendant Tyler Navarro was a sergeant with the Williamson County Police Department when the relevant events occurred and was acting under color of state law. Defendant Tyler Navarro initiated the unlawful traffic stop, detained the Plaintiff without reasonable suspicion or probable cause and conducted an unconstitutional search and seizure in violation of Fourth and Fourteen Amendments to the United States Constitution. Defendant Navarro also used his position of authority to coerce compliance, ignored the Plaintiff's refusal to consent, and escalated the encounter without legal justification. His actions were willful, reckless, and performed in bad faith. He is sued in both his individual and official capacities. He is sued in his individual and official capacity. He may be served with process at the Williamson County Sheriff's Office, 508 South Rock St., Georgetown, TX 78626, or wherever he may be found.

6. Defendant James Polk was a sergeant with the Williamson County Police Department when the relevant events occurred. He directly participated in the continued search and seizure with his K-9 unit and contributed in the detention and violation of Plaintiff's constitutional rights and allowed the unlawful search and seizure to occur. He is sued in his individual and official capacity. He may be served with process at the Williamson County Sheriff's Office, 508 South Rock St., Georgetown, TX 78626, or wherever he may be found.

7. Defendant Trevone Johnson was a sergeant with the Williamson County Police Department when the relevant events occurred. He directly participated in the continued detention and violation of Plaintiff's constitutional rights and allowed the unlawful search and seizure to occur. He is sued in his individual and official capacity. He may be served with process at the Williamson County Sheriff's

Office, 508 South Rock St., Georgetown, TX 78626, or wherever he may be found.

8. Defendant Case Winkler was a sergeant with the Williamson County Police Department when the relevant events occurred. He directly participated in the continued detention and violation of Plaintiff's constitutional rights and allowed the unlawful search and seizure to occur He is sued in his individual and official capacity. He may be served with process at the Williamson County Sheriff's Office, 508 South Rock St., Georgetown, TX 78626, or wherever he may be found.

9. Defendant Bryson Mora was a sergeant with the Williamson County Police Department when the relevant events occurred. He directly participated in the continued detention and violation of Plaintiff's constitutional rights and allowed the unlawful search and seizure to occur He is sued in his individual and official capacity. He may be served with process at the Williamson County Sheriff's Office, 508 South Rock St., Georgetown, TX 78626, or wherever he may be found.

## III. JURISDICTION AND VENUE

This court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1331 (federal question) and 28 U.S.C § 1343(civil rights). Venue in this district is proper under 28 U.S.C § 1391 (b)(2) because the events and conduct giving rise to the Plaintiffs claims asserted herein occurred within the judicial district.

## IV. FACTS AND ALLEGATIONS

1. Under Texas law, sheriffs are "final policymakers" in the area of law enforcement for the purposes of holding a county liable under § 1983. *James v. Harris Cty.*, 577 F.3d 612, 617 (5th Cir. 2009); citing *Williams v. Kaufman County*, 352 F.3d 994, 1013 (5th Cir.2003).

2. As sheriff, Defendant Matthew Lindemann was the Williamson County final policymaker and had been delegated policy-making authority by the Williamson County Commissioners Court.

3. Defendant James Briggs is a deputy with the Williamson County Sheriff's Department.

4. Defendant Tyler Navarro is a deputy with the Williamson County Sheriff's Department.

5. Defendant James Polk is a deputy with the Williamson County Sheriff's Department.

6. Defendant Trevone Johnson is a deputy with the Williamson County Sheriff Department.

7. Defendant Case Winkler s a deputy with the Williamson County Sheriff's Department.

8. Defendant Bryson Mora is a deputy with the Williamson County Sheriff Department.

### Defendant Navarro Used Excessive Force Against Mr. Emetom

10. On December 15, 2024 at about 11:40 p.m. Plaintiff Eton Emetom was assaulted by deputies with the Williamson County Sheriff's Office (the "WSCO") after being pulled over for allegedly missing a front license plate. Plaintiff was driving his car North US 183 Highway Rd, Austin, TX 78729 Williamson County, Texas. while in his private automobile registered with the United States Department Of Transportation (U.S. DOT #4279329)

11. Mr. Emetom was stopped and pulled over by Williamson County Officer and Defendant Tyler Navarro #15858 who initiated a traffic stop claiming a purported vehicle equipment violation of no front license plate.

12. Plaintiff properly turned on his hazard lights and began to pull over into a McDonald's parking lot located at 13749 N Hwy 183, Austin, TX 78750.

13. Defendant Navarro approached Plaintiffs automobile and began questioning Mr. Emetom

14. Mr. Emetom ask Defendant Navarro if he had committed any crimes or moving violations and the Defendant replied that "You have no front license plate."

15. Plaintiff then shows Defendant Navarro his front license on the front window of the car and paperwork that his automobile is registered as private property through the United States Department of Transportation US DOT #4279329

16. Defendant Navarro responded aggressively to Plaintiffs questions about why he was being stopped and detained and asked Plaintiff to exit the automobile.

17. Mr. Emetom refused to exit because no crime had been committed and asked for supervisor (Defendant James Briggs) called to the scene because he did not feel safe or comfortable exiting his property with the officers aggression towards him simply by asking questions and wanting someone with more experience to intervene.

18. Even when Mr. Emetom offered reasonable answers or responses to the questions Defendant Navarro shouted at him to exit the car. Defendant Navarro refused to acknowledge Mr. Emetom's answers or otherwise chose to imply that Mr. Emetom was refusing to answer questions or somehow resisting.

19. After several minutes of unrelated questioning, Officer Navarro threatened to make up a reason to get Mr.Emetom out of his property by any means and asserted that he detected the odor of marijuana emanating from the vehicle and that he was going to call a K9 Unit (Defendant James Polk) to the scene to conduct a search because he believed he smells marijuana in the car.

20. Mr. Emetom immediately clarified that he did not possess any marijuana or legal hemp, but was registered with the Texas Compassionate Use Program CURT for medical hemp and House Farm Bill 2018 allows citizens in Texas and the U.S to consume legal hemp.

21. Mr. Emetom informed Officer Navarro that he did not consent to any search and explicitly requested that a supervisor be called to the scene to oversee the encounter,

**Emetom:** "Can you call you supervisor"

Defendant Navarro verified that I asked for supervision in his later incident report were he said:

**Defendant Navarro:** "Eton stated that he did not consent to step out of his vehicle and stated he felt unsafe. I was the only deputy on scene at the time and again ask for cooperation to exit the vehicle which he refused, Eton requested a supervisor to the scene at which point I notified Sergeant Briggs."

22. During this exchange, Mr. Emetom further stated his intent to reserve all of his rights, including those protected under the Fourth and Fourteenth Amendments of the United States Constitution. Officer Navarro initially acknowledged this by responding, following the exchange captured on Defendant Navarro body cam:

**Defendant Navarro:** "You have every right to reserve your rights".

However, despite this acknowledgment, Officer Navarro proceeded to threaten Plaintiff with arrest for "failure to cooperate," and stated,

**Defendant Navarro:** "I don't need your consent to search your vehicle."

Plaintiff reiterated,

**Emetom:** I'm Not Trying To Give You A Hard Time, But I Just Want To Reserve My Rights.
**Emetom:** "I Do Not Consent To Any Searches Without A Warrant."

23. Defendant Navarro continued to escalate the situation in a manner that was coercive, unlawful, and in direct violation of Plaintiff's constitutional protections against unreasonable searches and seizures. Defendant Navarro then proceeded to deprived Mr.

Emetom of his constitutional rights by acting under color of state law when he said aggressively around 11:52 p.m. and at the 12:28:00 minute mark on his body-cam:

**Defendant Navarro:** "You Don"t Have Any Rights To Stay In Your Vehicle." — *Which clearly shows intentional disregard for constitutional protection.*

24. A few minutes later while waiting on the scene multiple Williamson County Sheriff officers (Defendants) and K-9 unit appeared including their supervisor Defendant James Briggs #11792

25. Defendant James Briggs began to aggressively question Mr. Emetom as to he was refusing to exit his property and to just let them do their job. Plaintiff once again respectfully asserted his constitutional rights, stating that he did not consent to any search without a warrant and that he wished to reserve all of his rights. In response, Defendant Briggs appeared visibly frustrated and dismissive of Plaintiff's invocation of his constitutional protections, stating,

**Defendant Briggs:** "Consent is out of your control,"

26. Defendant Briggs warned that if Plaintiff did not comply, he and the other officers would physically remove him out of the vehicle and place him under arrest. Despite Plaintiff's calm and repeated requests for a search warrant and his clear refusal to consent, Defendant Briggs failed to intervene the situation and escalated the encounter into a violent and unnecessary use of force, without presenting a warrant or any lawful basis to justify the search or seizure, the officers surrounded Plaintiff's vehicle and began forcibly opening the driver's side door.

27. As Mr. Emetom continued to assert that he did not consent and pleaded with the officers to show him a valid warrant to search his property and not to assault him , Defendant Briggs forcefully entered Mr. Emetom car by inserting his arm through the driver's side window, attempting to unlock and open the door from the inside.

28. Plaintiff told Sgt. Briggs that he did not want to be touched or grabbed and reiterated that his rights were being violated.

29. Nevertheless, Sgt. Briggs, Navarro, and James Polk continued to forcibly open the door and instructed Plaintiff to exit the vehicle.

30. Defendant Sgt. Briggs, Navarro and Polk all escalated a routine traffic stop into a physical confrontation without legal justification.

31. When Mr. Emetom refused Defendants Briggs, Navarro, and Polk aggressively grabbed Mr. Emetom by his arms, neck and legs, yanking him violently from the driver's seat. The officers showed no regard for Plaintiff's safety or bodily autonomy, using excessive force in a clearly non-threatening situation.

32. Plaintiff was ripped out of the vehicle with extreme excessive force, his body dragged and arms twisted back, causing intense physical pain.

33. Officers dug their hands into his arms and legs and one officer twisted Plaintiff's arm behind his back with such brutality that it caused excruciating pain, leaving Plaintiff screaming in distress. The pain was immediate and overwhelming, as the twisting of his joints felt like they were being wrenched from their sockets.

34. After being pulled from the vehicle, Plaintiff was pushed against the police cruiser, his body making forceful contact with the hard surface of the vehicle. The impact caused further pain to Plaintiff's shoulders, chest, and head. At no point was Plaintiff resisting arrest or posing a threat as said in the offense report from one of the officers.

**"Deputies had to remove Eton from the vehicle by grabbing his hand and pulling him from the driver seat of the vehicle. Eton was subsequently placed in handcuffs without incident". + offense report**

35. Plaintiff was fully restrained by multiple armed officers, and the use of such excessive and violent force was completely unjustified. The officers then tightened the handcuffs to the point of cutting into Plaintiff's wrists, exacerbating the pain and restricting circulation. Plaintiff informed the officers that he was in severe pain, yet they ignored his cries, continuing their unlawful conduct without providing any medical assistance or relief.

36. While conducting there unlawful search and seizure one officer via body cam made jokes saying to Navarro:

**Defendant**: "I think he's a sovereign citizen, are you worried about it", where Navarro replied.

**Navarro**: "No, I got other charges before" as if violating people's right is normal to him and have no regards for his actions.

37. After being left inside Defendant Navarro patrol vehicle for almost an hour, Plaintiff was told he was being charged with Interference with Public Duties and Unlawful Carry of A Firearm.

38. This violent and humiliating arrest left Plaintiff not only physically injured, but also emotionally traumatized. He was then unlawfully detained for over 30 hours in the Williamson County Jail without ever being afforded proper due process or medical attention related to the force used during the arrest. Mr. Emetom injuries consisted of a twisted sprained wrist from his hands being forcefully pulled behind his back and placed in cuffs, and sharp pain in his lower back from the incident. Mr. Emetom suffered and continues to suffer emotionally being prescribed pain medication, anxiety meditation and nerve damage as a result of trauma sustained during the assault, after a PTSD evaluation in Feb 2025 of Mr. Emetom combined physical and mental assessment of his injuries.

39. A couple weeks after Plaintiff's was release from the Williamson County Jail, on or about January 6, 2025, Plaintiff was again stopped and confronted by Defendant Officer Tyler Navarro, this time near the residence where Plaintiff was living. Without legal justification or reasonable suspicion, Officer Navarro initiated another traffic stop directly outside Plaintiff's home, and immediately began to question Plaintiff in a confrontational manner. During this encounter, Officer Navarro coerced Plaintiff into signing a citation for allegedly driving without a license, despite Plaintiff's efforts to explain his circumstances. The encounter felt deeply retaliatory in nature, especially given that Plaintiff had previously filed a formal complaint against Officer Navarro with the Williamson County Sheriff's Office regarding the events of December 15, 2024.

40. What disturbed Plaintiff further was that when he attempted to lodge this complaint, the Sheriff's Office transferred him directly to Officer Navarro, the very individual he was attempting to report. Plaintiff found this process not only inappropriate, but also intimidating and retaliatory, as it placed him in a position of having to explain his grievances to the officer who had violated his rights. Plaintiff later submitted additional complaints to Internal Affairs and the Texas State Commission on Judicial Conduct, raising concerns about the officers' behavior, abuse of authority, and lack of accountability. However, despite multiple attempts to seek redress, no corrective action was taken, and Plaintiff received no meaningful response from any oversight agency. The continued harassment, including the second traffic stop and coercive citation, constituted an ongoing pattern of retaliation and abuse of power, further violating Plaintiff's rights under the First, Fourth, and Fourteenth Amendments.

41. During the first stop Plaintiff posed no immediate threat, did not resist arrest, and complied with verbal commands of identifying myself.

42. Despite this, Williamson County Sheriff officers used force that was objectively unreasonable under Graham v. Connor.

43. Defendant Navarro's conduct violated Plaintiff's clearly established Fourth Amendment right to be free from excessive force during a traffic stop.

44. The alleged justification mirrors prior Williamson County stops involving minor vehicle infractions used as pretext for escalation.

45. At all times during the traffic stop, use of excessive force, and deprivation of rights occurred , Defendants were acting under color of law and pursuant to the customs and practices of the Williamson County Sheriff's Department and Defendant Lindemann.

46. Plaintiff further asserts claims under state law for intentional infliction of emotional distress, assault, and battery against Defendants Lindemann, Briggs, Navarro, Polk, Johnson, Winkler, and Mora.

47. Plaintiff alleges that Williamson County and its Policymakers, specifically Sheriff Matthew Lindemann and the County Commissioners Court, failed to properly train, supervise, screen, discipline, transfer, counsel, or otherwise properly equip

and control deputies including those who are known, or who should have been known, to engage in the use of excessive force. Further, Williamson County failed to properly implement training and policies governing the appropriate use of lethal and non-lethal force on members of the public.

48. The Policymakers had a duty, but failed to implement and/or enforce policies, practices and procedures for the WCSO that respected Plaintiff's constitutional rights to protection under the law. This duty was delegated to Defendant Lindemann to carry out the actions and policies of the County Commissioners by overseeing the day-to-day operation of the WCSO. Defendant Williamson County and its Policymakers' failure to adequately supervise, discipline, and train the individual Deputy Defendants, failure to implement the necessary policies and procedures, and affirmative implementation of unconstitutional policies caused Plaintiff's unwarranted and excruciating physical and mental anguish and injuries.

49. The Deputy Defendants acted in an objectively unreasonable manner and disregarded the rights of Plaintiff, knowing that the County and Defendant Lindemann would approve and/or ratify their actions.

50. For these civil rights violations and other causes of action discussed herein, Plaintiff seeks redress and compensation for damages in his unjustified assault.

## Williamson County's Custom and Practice of Using Excessive Force, Adopting the Nickname "Wilco Badass"

51. Williamson County created a culture of constitutional violations through incentivizing the excessive use of force, refusing to hold deputies accountable for assaulting citizens, deliberately providing inadequate training to young deputies, ignoring red flags when hiring deputies with histories of violence, and shifting the purpose of the department from increasing public safety to increasing television ratings through assaults and even death.

52. Prior to December 15, 2024, Williamson County had notice of repeated allegations involving excessive force and unconstitutional policing by its Sheriff's Office. As will be discussed further below, the Austin American-Statesman analyzed 124 use-of-force reports from 2017 to 2019 and discovered that only two cases over the three years analyzed did supervisors find policy violations. And multiple settlements and lawsuits have been filed since.

53. On January 25, 2019, Williamson County Sheriff's Deputies used excessive force against Scott Lewis, despite there being no legal justification to do so and pursuant to the Williamson County practice and custom of using excessive force to be "Wilco Badass." No deputies were disciplined for this use of excessive force.

54. On February 24, 2019, Williamson County Sheriff's Deputies used excessive force against Charles Thornburg, despite there being no legal justification to do so and pursuant to the Williamson County practice and custom of using excessive force to be "Wilco Badass." No deputies were disciplined for this use of excessive force.

55. On March 28, 2019, Williamson County Sheriff's Deputies used excessive force killing Javier Ambler III despite there being no legal justification to do so and pursuant to the Williamson County practice and custom of using excessive force to be "Wilco Badass." The Ambler family received a $5 million settlement from Williamson County in December 2021 for the wrongful death of Javier Ambler III, who died in March 2019 after deputies used Tasers and excessive force during a traffic stop that was filmed for "Live PD". The lawsuit alleged deputies were encouraged to engage in reckless behavior for the TV show, leading to Ambler repeatedly saying he couldn't breathe before his death, prompting charges against the deputies and indictments for county officials involved in evidence tampering. https://www.statesman.com/story/news/2021/12/14/javier-ambler-wrongful-death-lawsuit-williamson-county-sheriff-robert-chody/8892296002/

56. On April 10, 2019, Williamson County Sheriff's Deputies used excessive force against Spencer Murphy, despite there being no legal justification to do so and pursuant to the Williamson County practice and custom of using excessive force to be "Wilco Badass." No deputies were disciplined for this use of excessive force. Over six months later, Deputy Lorenzo Hernandez was removed from his position as a field training officer over this incident; however, he was promoted to detective shortly thereafter.

57. On June 2, 2019, a Williamson County Sheriff's Deputy used excessive force against Marquina Gilliam-Hicks by slamming her to the ground for failing to identify herself during a consensual encounter, despite there being no legal justification to do so and pursuant to the Williamson County practice and custom of using excessive force to be "Wilco Badass." This deputy was not disciplined for this use of excessive force.

58. On June 14, 2019, the same Williamson County Sheriff's Deputies that killed Javier Ambler used excessive force against Ramsey Mitchell that was filmed on Live PD, despite there being no legal justification to do so and pursuant to the Williamson County practice and custom of using excessive force to be "Wilco Badass." in *Mitchell v. Williamson County*, the County paid a settlement of approximately $325,000 arising from allegations of excessive force and civil rights violations by county deputies. Despite this notice, Williamson County failed to modify training, supervision, or discipline practices, thereby demonstrating deliberate indifference. The deputies again were not disciplined for this use of excessive force.

59. On August 10, 2020 Elizabeth Firex filed a lawsuit against Williamson County were a $250,000 settlement was approved by Williamson County commissioners. The lawsuit claimed she was improperly restrained into an emergency restraint chair and left alone and unsupervised for hours, resulting in fractures to three of

her vertebrae. https://www.kvue.com/article/news/local/williamson-county-commissioners-250k-settlement-woman-injured-jail-restraints/269-0532904b-6eff-4c9c-a9ab-d5b057f64391

60. In October 2024, Williamson County in Texas agreed to a **$2.5 million settlement** with Gary Watsky, stemming from a 2019 "staged" SWAT-like arrest of his son, Asher Watsky, which was orchestrated for the A&E reality show *Live PD*. Asher Watsky $2,500,000 Staged SWAT-like arrest for Live PD 2024 - WILLIAMSON COUNTY, Texas — Williamson County commissioners have agreed to settle a case for $2.5 million with a man whose arrest was believed to have been staged for the reality TV show "Live PD" when deputies could have quietly arrested him hours earlier. The KVUE Defenders first revealed the case involving Asher Watsky in 2020 as part of ongoing coverage involving the relationship between the Williamson County Sheriff's Office and the popular show, which has since been cancelled. https://www.statesman.com/story/news/local/2024/10/16/cedar-park-texas-asher-watsky-lawsuit-settlement-staged-live-pd-tv-show-arrest/75360443007/

61. Williamson County Settles $1.15 Million Lawsuit Over In-Custody Police Brutality Incident - Williamson County has agreed to pay $1.15 million to settle a lawsuit brought by a former inmate who says he was the victim of in-custody police brutality at the county jail. The case centers around shocking allegations that several jailers broke the man's leg and fractured his hip while he was not resisting them — and then denied him medical care for hours. Johnny Tijerina in 2024, alleges that on October 26, 2023, Tijerina was booked into the Williamson County Jail after a DWI arrest. During the booking process, Tijerina — who suffers from anxiety, a learning disability, and is hard of hearing — became confused and had difficulty following shouted commands from multiple officers. According to the complaint, instead of de-escalating the situation, jailers escalated to violence. They handcuffed Tijerina behind his back, led him to a cell, and yelled at him to remove his clothes. When he explained that he could not comply

unless his handcuffs were removed, one of the jailers ordered other officers to "take him down." The lawsuit states that one officer swept Tijerina's leg from beneath him, causing him to fall. Four other jailers then piled on top of him. As he screamed in pain, Tijerina told them his leg was broken — but instead of helping, they allegedly forced him to stand on the broken leg and placed him in a restraining chair, bending his already fractured hip. https://austinaccidentlawyer.com/police-brutality/williamson-county-settles-1-15-million-lawsuit-over-in-custody-police-brutality-incident/

62. Imani Nembhard settled with Williamson County commissioner in September 2023 for $120,000 for excessive force. In *Nembhard v. Williamson County*, the County settled claims arising from a 2019 traffic stop in which a deputy named Officer Christopher Pisa initiated a stop based on an alleged no front license plate violation and subsequently used force by throwing Ms. Nembhard to the ground in front of her children. The Nembhard incident involved a minor vehicle equipment allegation that escalated into physical force, mirroring the factual circumstances of Plaintiff Emetom's stop. Despite the settlement and public reporting of the incident, Williamson County failed to modify its training, supervision, or discipline practices, thereby demonstrating deliberate indifference to the risk of future constitutional violations. https://www.statesman.com/story/news/local/2023/09/22/williamson-county-excessive-force-lawsuit-imani-nembhard-arrest-texas/70927111007/

**Prior federal civil rights complaints filed against Williamson County alleging that deputies were encouraged to escalate routine encounters and rewarded for aggressive tactics, including the use of force during traffic stops and arrests.**

63. The Williamson County Sheriff's Department encouraged using excessive force by failing to hold deputies accountable for using excessive force and instead ratifying their behavior by refusing to discipline them, suspend them pending investigation, or sustain policy violations for using excessive force.

i. The Austin American-Statesman's analysis of 124 use-of-force reports shows that only two cases over the three years analyzed (2017 to 2019) did supervisors find policy violations.

ii. Deputies Johnson and Camden, the deputies involved in the March 2019 death of Javier Ambler were never placed on leave following Ambler's death.

iii. The Williamson County Sheriff's Department cleared all deputies involved in the Lewis, Thornburg, Ambler, Murphy, and Mitchell use of excessive force incidents prior to Defendant Pisa's use of excessive force against Ms. Nembhard in this case.

iv. Despite Defendant Pisa's field training officer, Deputy Lorenzo Hernandez using excessive force against Spencer Murphy prior to Defendant Pisa using excessive force against Ms. Nembhard, Deputy Hernandez was allowed to continue operating as a field training officer until October 24, 2019 and then after removal from that position was promoted to detective.

v. Two different supervisors in April 2019 cleared Defendant Pisa of wrongdoing after watching his body and dash camera videos and reviewing the use-of-force report associated with his use of force on Ms. Nembhard that forms the basis of this lawsuit. Williamson County maintained a policy of failing to train deputies, like Defendant Pisa, in de-escalation, use of force, and conducting traffic stops, by changing academic standards without approval to make it easier for some cadets and supervisors decreasing Defendant Pisa's field training from the standard five to seven months to only 12 weeks, and at the time that Williamson County maintained this inadequate training, it knew that (1) the training procedures used for Defendant Pisa were inadequate as he did not receive the same amount of training in de-escalation, use of force, and conducting traffic stops that is standard in the industry according to the Texas Commission on Law

Enforcement and other departments and (2) that this insufficient training would lead to Constitutional violations like it of excessive force incidents prior to Defendant Pisa's use of excessive force against Ms. Nembhard in this case.

vi. Despite Defendant Pisa's field training officer, Deputy Lorenzo Hernandez using excessive force against Spencer Murphy prior to Defendant Pisa using excessive force against Ms. Nembhard, Deputy Hernandez was allowed to continue operating as a field training officer until October 24, 2019 and then after removal from that position was promoted to detective.

vii. Two different supervisors in April 2019 cleared Defendant Pisa of wrongdoing after watching his body and dash camera videos and reviewing the use-of-force report associated with his use of force on Ms. Nembhard that forms the basis of this lawsuit.

64. Williamson County maintained a policy of failing to train deputies, like Defendant Pisa, in de-escalation, use of force, and conducting traffic stops, by changing academic standards without approval to make it easier for some cadets and supervisors decreasing Defendant Pisa's field training from the standard five to seven months to only 12 weeks, and at the time that Williamson County maintained this inadequate training, it knew that (1) the training procedures used for Defendant Pisa were inadequate as he did not receive the same amount of training in de-escalation, use of force, and conducting traffic stops that is standard in the industry according to the Texas Commission on Law Enforcement and other departments and (2) that this insufficient training would lead to Constitutional violations like it did in this case when Defendant Pisa used excessive force against Ms. Nembhard.

i. An investigation last year by the Texas Commission on Law Enforcement found that the Williamson sheriff's academy changed academic standards without approval to make it easier for some cadets.

ii. Defendant Pisa's training about how to conduct traffic stops, use force, and perform de-escalation techniques was abbreviated to rush cadets, including Defendant Pisa, onto the street.

iii. Once Defendant Pisa began patrolling in September 2018, supervisors also decreased his field training from the standard five to seven months to only 12 weeks.

iv. Like Defendant Pisa, more than 40% of the deputies named in use- of-force reports since 2017 had been with the department for two years or less, and in at least a dozen cases, deputies involved had been employed for less than a year. Williamson County maintained a policy of failing to supervise deputies, like Defendant Pisa, by decreasing his field training where he would be patrolling with a supervising officer from the standard five to seven months to only 12 weeks and by allowing Defendant Pisa to patrol alone less than four months after he graduated from the training academy, whose academic training standards Williamson County changed without approval from the Texas Commission on Law Enforcement to make it easier for cadets to pass and get out onto the street patrolling alone, all while knowing that this insufficient supervision would lead to Constitutional violations like it did in this case when Defendant Pisa used excessive force against Ms. Nembhard.

i. In addition to the Williamson County Sheriff's Department cutting short Defendant Pisa's academy and field training, it relied on another deputy, Lorenzo Hernandez, who was the subject of two use- of-force investigations to supervise Defendant Pisa as his Field Training Officer, during the abbreviated period of time that Defendant Pisa was supervised while out on patrol.

65. The § 1983 causation component requires that the plaintiffs identify, with particularity, the policies or practices they allege cause the constitutional violation, and

demonstrate a "direct causal link." *M. D. by Stukenberg*, 907 F.3d at 255; See *Piotrowski*, 237 F.3d at 580. The Fifth Circuit does not, however, require the court to consider each policy or practice in a vacuum. The court may properly consider how individual policies or practices interact with one another within the larger system and how the harmful effects of some policies are exacerbated by others.

66. The individual policies and practices outlined above interacted with one another within the larger system and culture of using excessive force against citizens to gain notoriety for the department and the sheriff himself, caused constitutional violations of citizens in the community, such as when Defendant Pisa used excessive force against Ms. Nembhard in this case.

67. It is clear that the harmful effects of all these policies and practices exacerbated the harmful effects of each other; i.e., failing hiring deputies with red flags, giving them the power to train young deputies, changing the academic standards in the training academy without approval from the Texas Commission on Law Enforcement and then reducing the standard amount of field training time, allowing the undertrained and unsupervised new cadets to patrol alone, incentivizing uses of force by rewarding deputies with steakhouse gift cards and exposure on the Live PD television show, ignoring rapid increases in uses of force and excessive force, and showing these undertrained and under supervised deputies that the department will not hold deputies who use excessive force accountable by suspending them or sustaining complaints. As a result, this Court is not required to consider each policy or practice in a vacuum but may instead properly consider how each individual policy or practice interacts with one another within the larger system and how the harmful effects of some policies are exacerbated by others. *M. D. by Stukenberg*, 907 F.3d at 255; *See Piotrowski*, 237 F.3d at 580.

**Deputies were Incentivized to Use Force and to be "Wilco Badass"**

The Williamson County Sheriff's Office and former Williamson County Sheriff Robert Chody incentivized violence and use of force by Williamson County Sheriff's Deputies by rewarding them with fame and fortune.

https://www.statesman.com/story/news/crime/2020/09/17/officers-rewarded-for-use-of-force-with-steakhouse-gift-cards-former-williamson-deputies-say/114052044/

**Use Force, Get a Steak Dinner**

The Williamson County Sheriff's Department rewarded deputies who used force on the job with steakhouse gift cards, incentivizing violence and ultimately constitutional violations, like the one Defendant Pisa committed against Ms. Nembhard in this case. https://thegrio.com/2020/09/18/deputies-gift-cards-using-force/

During the Nembhard v. Williamson County suit following Christopher Pisa's resignation from the Williamson County Sheriff's Department, the Texas Rangers interviewed him as part of their investigation into his use of force against Ms. Nembhard, which forms the basis of this lawsuit.

During that investigation, Defendant Pisa spoke about Williamson County's use of force incentive program with the steakhouse gift cards.

Among the deputies who received gift cards to places such as Logan's Roadhouse were J.J. Johnson and Zach Camden, the officers involved in the March 2019 death of Javier Ambler II.

Former Sgt. Troy Brogden, who resigned from the department in 2019, corroborated Pisa's claim regarding Williamson County using gift cards as incentives for using force.

Defendant Pisa claimed that Commander Deaton would talk about the gift cards during meetings, "It was something everybody knew," Pisa said. "He has even said it to people in meetings."

As will be discussed further below, the Austin American-Statesman analyzed 124 use-of-force reports from 2017 to 2019 and discovered that only two cases over the three years analyzed did supervisors find policy violations.

Accordingly, Williamson County always agreed with the uses of force (98 percent of the time over these three years) and these gift cards were being given for using force generally and were an incentive to use force even when force was not justified.

Defendant Pisa stated during his interview with the Texas Rangers that he thought he was going to get a gift card from Deaton because he hands out gift cards for use of force.

Thus, Williamson County's use of force incentive program rewarding deputies with steakhouse gift cards when they used force directly caused Defendant Pisa to use force against Ms. Nembhard in this case in violation of her Constitutional rights.

Former Sgt. Brogden echoed this when he stated, "He [Deaton] would talk about it [gift cards rewarding use of force] in groups, including supervisors meetings and classes," Brogden said. "I was like, 'What the hell?'"

Brogden worked for the agency for 20 years, including as a supervisor overseeing major cases in the Criminal Investigations Division, before resigning last fall.

Defendant Pisa said the department's practice of handing out gift cards in certain use-of-force cases was "common knowledge" and that Deaton was responsible for reviewing incidents and awarding the cards.

Defendant Pisa explained, "[t]hey had the intention that we were all 'WilCo badass' and, if you went out there and did your job and you had to use force on somebody and he agreed with it, then you would get a gift card.

### Use of Force by Williamson County Deputies Increased

Although Defendant Pisa's encounter with Ms. Nembhard was not captured on "Live PD," cameras had been filming with the department the day before. Shockingly, fifty-five percent of Williamson County's force incidents in 2019 occurred during just the 29 weeks "Live PD" filmed.
https://www.kvue.com/article/news/investigations/defenders/use-of-force/report-williamson-deputies-used-more-force-on-live-pd-weeks/269-edf9b640-e5ae-44c6-b74c-2c07865f088d

According to University of Missouri-St. Louis professor David Klinger, typically, use-of-force encounters increase in a community if violent crimes increase. However, when "Live PD" embedded with officers week after week, force incidents rose in 2019 compared with the previous year, even though Williamson County's violent crime rate dropped by 7%.

Deputies also used Tasers nearly twice as often in 2019, compared to 2017. Tasers were used in more than half of the force incidents from 2017 to 2019, a rate experts described as excessive. According to Justin Mozzola, a researcher with Amnesty International, "When they use it that often, it is usually indicative of misusing them in instances where it's probably not justified."

While Defendant Pisa did not use a Taser on Ms. Nembhard, this statistic further demonstrates the increased use of unjustifiable and excessive force in the Williamson County Sheriff's Department during this time period.

Nearly three-quarters of the force encounters during the three-year period resulted in injuries.

An Austin American-Statesman analysis of 124 use-of-force reports shows that violent encounters between Williamson County sheriff's deputies and civilians nearly doubled from 43 in 2017 — the year before "Live PD" joined the agency — to 82 in 2019.

Reports show that many of the deputies who used force had been on the job two years or fewer — including Deputy Pisa in this case.

When the TV show started following the department, data shows that deputies began using aggressive tactics more frequently. During the third week of filming with "Live PD," deputies reported four force encounters in a single day, more than any other day from 2017 to 2020.

**Officers were not held accountable**

Williamson County deputies were almost never disciplined for using force.

The American-Statesman's analysis of 124 use-of-force reports shows that only two cases over the three years analyzed (2017 to 2019) did supervisors find policy violations.

Deputies James "JJ" Johnson and Zachary Camden, the deputies involved in the March 2019 in-custody death of Javier Ambler were never placed on leave following Ambler's death.

Those same two deputies were involved in another excessive force case involving Ramsey Mitchell just three months later.

Neither deputy was ever placed on leave while the Williamson County Sheriff's Department internal affairs investigators worked to figure out whether either deputy committed any violations of department policy or the law. The Williamson County Sheriff's Department cleared all deputies involved in the Ambler and Mitchell arrests.

Two different supervisors in April 2019 cleared Defendant Pisa of wrongdoing after watching his body and dash camera videos and reviewing the use-of- force report associated with his use of force on Ms. Nembhard that forms the basis of this lawsuit.

However, Defendant Pisa was indicted by a grand jury for the same use of force only six months later in October 2019.

Shockingly, Williamson County rehired Defendant Pisa just three months after he was indicted on one count of Official Oppression and one count of Assault Causing Bodily Injury for his use of excessive force against Ms. Nembhard in this case.

**Williamson County's Failure to Train Defendant Navarro on Constitutional Limits**
To plead a plausible failure-to-train claim, a plaintiff must allege sufficient facts to show: (1) the training procedures were inadequate; (2) the [county's] policymaker was deliberately indifferent in adopting the training policy; and (3) the inadequate training policy directly caused [the plaintiff's] injury." *Carnaby v. City of Houston*, 636 F.3d 183, 189 (5th Cir. 2011).

69. Defendant Tyler Navarro was hired on October 15, 2021 and had been working for Williamson County (WCSO) for over 3 years after he graduated from the training academy prior to the incident with Mr. Emetom.

70. During a criminal evidentiary hearing for a motion of suppression hearing filed by Mr. Emetom arising from the same December 15, 2024 incident at issue in this lawsuit,

Defendant Tyler Navarro was subpoenaed to court and took the stand to testified under oath regarding his understanding of constitutional law governing police conduct.

71. During that proceeding, while be questioned, Defendant Navarro stated that he was not familiar with the Fourth Amendment or the Fourteenth Amendment to the United States Constitution, despite acknowledging that he had taken an oath to uphold the Constitution of the United States and the Constitution of the State of Texas.

72. The Fourth Amendment governs searches, seizures, traffic stops, arrests, and use of force by law enforcement officers, while the Fourteenth Amendment governs due process and the protection of individual rights against state actors.

73. Defendant Navarro's sworn admission that he lacked familiarity with these foundational constitutional protections demonstrates a failure by Williamson County to adequately train its deputies on the most basic legal limits of their authority.

74. Williamson County knew or should have known that deputies would inevitably be required to make split-second decisions involving traffic stops, detentions, arrests, and use of force, all of which are governed by clearly established Fourth and Fourteenth Amendment law.

75. Despite this obvious need, Williamson County failed to ensure that Defendant Navarro possessed even a baseline understanding of constitutional principles, thereby creating a substantial risk that deputies would violate the rights of civilians during routine encounters.

76. This failure to train was not the result of mere negligence, but constituted deliberate indifference to the constitutional rights of persons with whom Williamson County deputies would foreseeably come into contact, including Plaintiff Eton Emetom.

77. Plaintiff further asserts claims under state law for intentional infliction of emotional distress, assault, and battery against Defendants Lindemann, Briggs, Navarro, Polk, Johnson, Winkler, and Mora.

78. Plaintiff alleges that Williamson County and its Policymakers, specifically Sheriff Matthew Lindemann and the County Commissioners Court, failed to properly train, supervise, screen, discipline, transfer, counsel, or otherwise properly equip and control deputies including those who are known, or who should have been known, to engage in the use of excessive force. Further, Williamson County failed to properly implement training and policies governing the appropriate use of lethal and non-lethal force on members of the public.

79. The Policymakers had a duty, but failed to implement and/or enforce policies, practices and procedures for the WCSO that respected Plaintiff's constitutional rights to protection under the law. This duty was delegated to Defendant Matthew Lindemann to carry out the actions and policies of the County Commissioners by overseeing the day-to-day operation of the WCSO. Defendant Williamson County and its Policymakers' failure to adequately supervise, discipline, and train the individual Deputy Defendants, failure to implement the necessary policies and procedures, and affirmative implementation of unconstitutional policies caused Plaintiff's unwarranted and excruciating physical and mental anguish and injuries.

80. The Deputy Defendants acted in an objectively unreasonable manner and disregarded the rights of Plaintiff, knowing that the County and Defendant Lindemann would approve and/or ratify their actions.

81. For these civil rights violations and other causes of action discussed herein, Plaintiff seeks redress and compensation for damages in his unjustified assault.

## Williamson County's Failure to Supervise

A failure-to-supervise claim, a plaintiff must show: "(1) the [county] failed to train or supervise the officers involved; (2) there is a causal connection between the alleged failure to supervise or train and the alleged violation of the [the plaintiff's] rights; and (3) the failure to train or supervise constituted deliberate indifference to the [plaintiff's] constitutional rights." *Peña v. City of Rio Grande City*, 879 F.3d 613, 623 (5th Cir. 2018) (quoting *Thompson v. Upshur Cty.*, 245 F.3d 447, 459 (5th Cir. 2001)).

Williamson County failed to adequately supervise Defendant Navarro by permitting him to exercise police authority without effective oversight or correction, despite clear indicators that he lacked a basic understanding of constitutional limits on law enforcement conduct.

During a criminal evidentiary hearing arising from the December 15, 2024 incident, Defendant Navarro admitted under oath that he was not familiar with the Fourth or Fourteenth Amendments to the United States Constitution, despite acknowledging that he took an oath to uphold the Constitution before becoming a police officer for Williamson County.

This lack of constitutional knowledge manifested during Plaintiff's traffic stop, when Defendant Navarro told Plaintiff that he *"didn't have any rights,"* refused to honor Plaintiff's request to remain in his vehicle, and escalated a routine encounter without lawful justification.

Williamson County further failed to supervise Defendant Navarro by allowing his conduct to continue unchecked even after a supervising officer, Defendant James Briggs, was summoned to the scene. Rather than de-escalate the encounter or correct Defendant Navarro's unconstitutional statements and actions, Defendant Briggs ratified and

escalated the situation, threatened force, and permitted the continued violation of Plaintiff's rights.

By failing to intervene, correct, or restrain Defendant Navarro's conduct during the encounter, Williamson County demonstrated deliberate indifference to the constitutional rights of civilians and effectively authorized unconstitutional policing practices through inadequate supervision.

Williamson County's failure to train deputies on their duty to intervene and de-escalate, particularly when a fellow officer violates constitutional rights, further demonstrates deliberate indifference to the constitutional rights of civilians and effectively authorized unconstitutional policing practices through inadequate supervision. The conduct of multiple deputies during Plaintiff's encounter shows that non-intervention was not an isolated lapse, but a learned and tolerated practice.

As the policymaker for the Williamson County Sheriff's Department, Defendant Lindemann was responsible for the training standards at his academy and was also responsible for this change in standards.

**Williamson County's Custom of Failing to Intervene and De-Escalate**

An officer who is present at the scene and does not take reasonable measures to protect a suspect from another officer's use of excessive force may be held liable under § 1983 if the officer had a reasonable opportunity to intervene. Whitley v. Hanna, 726 F.3d 631, 646 (5th Cir. 2013). To establish bystander liability, a plaintiff must show that an officer knew a constitutional violation was occurring, had a reasonable opportunity to prevent the harm, and failed to intervene. An officer who is present at the scene and does not take reasonable measures to protect a suspect from another officer's use of excessive force may be held liable under § 1983. Whitley v. Hanna, 726 F.3d 631, 646 (5th Cir. 2013); Joseph v. Bartlett, 981 F.3d 319, 343 (5th Cir. 2020).

## A. Failure to Intervene

During the December 15, 2024 encounter, multiple Williamson County deputies, including Defendants Briggs, Polk, Johnson, Winkler, and Mora, were present and observed Defendant Navarro's escalating and unconstitutional conduct toward Plaintiff.

At no point did any of these officers attempt to de-escalate the situation, correct Defendant Navarro's unlawful statements, or intervene to prevent the use of force.

The encounter unfolded over a prolonged period, providing ample opportunity for intervention, yet the deputies instead surrounded Plaintiff's vehicle, issued threats of force, and participated in or facilitated Plaintiff's forcible removal.

Defendant Briggs, acting in a supervisory capacity, was specifically summoned to the scene to de-escalate the encounter. Rather than fulfilling this role, Defendant Briggs ratified Defendant Navarro's conduct, threatened physical force, and authorized the continuation of unconstitutional actions.

This collective failure to intervene reflects a custom and practice within the Williamson County Sheriff's Office of tolerating and encouraging escalation rather than de-escalation, and directly contributed to the violation of Plaintiff's constitutional rights.

## B. Excessive Force – Bystander Liability

Failure to Intervene in the Use of Excessive Force.

Defendants, Johnson, Winkler, and Mora observed Defendants Briggs, Navarro, and Polk's unlawful escalation and use of force against Mr. Emetom and had a reasonable opportunity to intervene.

Despite Plaintiff posing no threat and not resisting, these Defendants failed to take any steps to stop the use of force, warn Defendant Navarro, or otherwise protect Plaintiff from harm.

Their inaction constitutes deliberate indifference and renders them liable for the resulting constitutional violations.

## V. CLAIMS FOR RELIEF

### DELIBERATE INDIFFERENCE AND CAUSES OF ACTION UNDER
*Monell v. New York City Department of Social Services*
Violations of the 4th Amendment Pursuant to 42 U.S.C. § 1983
Against Defendant Williamson County

Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs as if fully repeated herein.

Municipalities, including counties and cities, may be held liable under § 1983. *Hampton Co. Nat'l Sur., LLC v. Tunica Cty.*, 543 F.3d 221, 224 (5th Cir. 2008).

A municipality may be liable under § 1983 if the execution of one of its customs or policies deprives a plaintiff of his or her constitutional rights. *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690–91 (1978).

Municipal liability may attach where the constitutional deprivation is pursuant to a governmental custom, even if such custom has not received formal approval. *Zarnow v. City of Wichita Falls, Tex.*, 614 F.3d 161, 166 (5th Cir. 2010) (citing *Monell*, 436 U.S. at 690–91).

"Under the decisions of the Supreme Court and [the Fifth Circuit], municipal liability under section 1983 requires proof of three elements: a policy maker; an official policy;

and a violation of constitutional rights whose 'moving force' is the policy or custom." *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001) (citing *Monell*, 436 U.S. at 694).

The plaintiff may demonstrate a "persistent widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy." *Zarnow*, 614 F.3d at 168–69 (quoting *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir.1984).

A municipality "cannot be liable for an unwritten custom unless '[a]ctual or constructive knowledge of such custom' is attributable to a city policymaker." *Pena v. City of Rio Grande City*, 879 F.3d 613, 623 (5th Cir. 2018) (citing *Hicks–Fields*, 860 F.3d at 808.

To establish municipal liability under § 1983 based on an alleged "persistent widespread practice or custom that is so common it could be said to represent municipal policy, actual or constructive knowledge of such practice or custom must be shown." *Malone v. City of Fort Worth*, 297 F. Supp. 3d 645, 654 (N.D. Tex. 2018) (citing *Hicks–Fields*, 860 F.3d at 808).

"Constructive knowledge may be attributed to the governing body on the ground that it would have known of the violations if it had properly exercised its responsibilities..." *Hicks–Fields v. Harris Cty.*, 860 F.3d 803, 808 (5th Cir. 2017)).

### Policymaker

Under Texas law, sheriffs are "final policymakers" in the area of law enforcement for the purposes of holding a county liable under § 1983. *James,* 577 F.3d at 617; citing *Williams*, 352 F.3d at 1013.

Defendant Lindemann is aWilliamson County sheriff and final policymaker and had been delegated policy-making authority by the Williamson County Commissioners Court.

As Sheriff, Defendant Lindemann was directly involved with implementing each of the Williamson County Sheriff's Department policies and practices discussed in this lawsuit; accordingly, he had actual knowledge of each.

Defendant Lindemann had actual knowledge of the failure to train and supervise as he was the policymaker in charge of maintaining and implementing the training in the academy and the field training officer program at the department.

Alternatively, Defendant Lindemann had constructive knowledge of the failure to train and supervise in the academy and the field training officer program at the department, as Defendant Lindemann would have known of these practices in the department had he exercised his responsibilities. *Hicks–Fields,* 860 F.3d at 808.

Defendant Lindemann had actual knowledge of the encouragement of the use of excessive force among the department and was discussed openly at meetings.

Alternatively, Defendant Lindemann had constructive knowledge of the encouragement of the use of excessive force and Defendant Lindemann would have known of this common practice in the department had he exercised his responsibilities. *Hicks–Fields,* 860 F.3d at 808.

Defendant Lindemann had actual knowledge of the hiring practices that ignored red flags and violations by new hires from other departments as he was actively involve in seeking out and hiring these deputies.

Alternatively, Defendant Lindemann had constructive knowledge of the hiring practices that ignored red flags and violations by new hires from other departments, as Defendant Lindemann would have known of this practice in the department had he exercised his responsibilities. *Hicks–Fields,* 860 F.3d at 808.

Defendant Lindemann had actual knowledge that deputies were not being held accountable for their uses of excessive force because he was responsible for reviewing uses ot force and disciplining deputies in his department.

Alternatively, Defendant Lindemann had constructive knowledge that deputies were not being held accountable for their uses of excessive force, as Defendant Lindemann would have known of this practice in the department had he exercised his responsibilities. *Hicks–Fields,* 860 F.3d at 808.

## Policy, Custom, and Practice
### Which was Moving Force of Constitutional Violations

The § 1983 causation component requires that the plaintiffs identify, with particularity, the policies or practices they allege cause the constitutional violation, and demonstrate a "direct causal link." *M. D. by Stukenberg v. Abbott,* 907 F.3d 237, 255 (5th Cir. 2018); See *Piotrowski,* 237 F.3d at 580. The Fifth Circuit does not, however, require the court to consider each policy or practice in a vacuum. *Id.* The court may properly consider how individual policies or practices interact with one another within the larger system and how the harmful effects of some policies are exacerbated by others. *Id.*

### Custom, Practice, and Culture of Using Excessive Force

Williamson County created a culture of constitutional violations through incentivizing the excessive use of force, refusing to hold deputies accountable for assaulting citizens, deliberately providing inadequate training to young deputies, deliberately failing to supervise young inexperienced and undertrained deputies, ignoring red flags when hiring

deputies with histories of violence, and shifting the purpose of the department from increasing public safety to increasing television ratings through assaults and even death.

The Austin American-Statesman analyzed 124 use-of-force reports from 2017 to 2019 and discovered that only two cases over the three years analyzed did supervisors find policy violations.

On January 25, 2019, Williamson County Sheriff's Deputies used excessive force against Scott Lewis, despite there being no legal justification to do so and pursuant to the Williamson County practice and custom of using excessive force to be "Wilco Badass." No deputies were disciplined for this use of excessive force.

On February 24, 2019, Williamson County Sheriff's Deputies used excessive force against Charles Thornburg, despite there being no legal justification to do so and pursuant to the Williamson County practice and custom of using excessive force to be "Wilco Badass." No deputies were disciplined for this use of excessive force.

On March 28, 2019, Williamson County Sheriff's Deputies used excessive force killing Javier Ambler, despite there being no legal justification to do so and pursuant to the Williamson County practice and custom of using excessive force to be "Wilco Badass." No deputies were disciplined for this use of excessive force.

On April 10, 2019, Williamson County Sheriff's Deputies used excessive force against Spencer Murphy, despite there being no legal justification to do so and pursuant to the Williamson County practice and custom of using excessive force to be "Wilco Badass." No deputies were disciplined for this use of excessive force. Over six months later, Deputy Lorenzo Hernandez was removed from his position as a field training officer over this incident; however, he was promoted to detective shortly thereafter.

On June 2, 2019, a Williamson County Sheriff's Deputy used excessive force against Marquina Gilliam-Hicks by slamming her to the ground for failing to identify herself during a consensual encounter, despite there being no legal justification to do so and pursuant to the Williamson County practice and custom of using excessive force to be "Wilco Badass." This deputy was not disciplined for this use of excessive force.

On June 14, 2019, the same Williamson County Sheriff's Deputies that killed Javier Ambler used excessive force against Ramsey Mitchell, despite there being no legal justification to do so and pursuant to the Williamson County practice and custom of using excessive force to be "Wilco Badass." The deputies again were not disciplined for this use of excessive force.

On April 21, 2019, a Williamson County Sheriff's Deputy used excessive force against Imani Nembhard while she was driving her brother's car with no front license plate through Williamson County, Texas, by slamming her to the ground in front of her two children. Depsite there being no legal justification to do so and pursuant to the Williamson County practice and custom of using excessive force to be "Wilco Badass." This deputy was not disciplined for this use of excessive force.

### COUNT I
### *42 U.S.C § 1983 Deprivation of Rights Under Color of Law*
### *(Fourth & Fourteenth Amendments)*

Plaintiff hereby incorporates all preceding paragraphs as if fully stated herein.

Plaintiff would show that, at all times relevant to this Count, the Defendant officers were acting under color of state law and within the course and scope of their employment as law-enforcement officers for Williamson County.

Plaintiff would show that the actions of each of the Defendants named in this Count deprived Plaintiff of rights, privileges, and immunities secured by the Constitution and laws of the United States.

Plaintiff would show that Defendants had a duty to respect Plaintiff's constitutional rights, including but not limited to the right to be free from unreasonable seizures, unlawful detention, arbitrary exercises of authority, and deprivation of liberty and property without due process of law, as guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution.

Plaintiff would further show that during the traffic stop at issue, Defendant Tyler Navarro expressly told Plaintiff that he **"did not have any rights,"** and asserted that Plaintiff had no right to remain in his vehicle, despite the absence of lawful justification to order Plaintiff out of the vehicle or to escalate the encounter.

Plaintiff would show that this statement was false, unlawful, and contrary to clearly established law. The Supreme Court has held that a traffic stop constitutes a seizure under the Fourth Amendment, and that citizens retain constitutional protections against arbitrary police action during such encounters. *Delaware v. Prouse*, 440 U.S. 648, 653 (1979). Absent reasonable suspicion or probable cause justifying further intrusion, officers may not arbitrarily expand the scope of a stop or disregard a citizen's constitutional rights. *Rodriguez v. United States*, 575 U.S. 348, 354–57 (2015).

Plaintiff expressly and unequivocally informed Defendant Tyler Navarro that he did not consent to any search of his person or vehicle. Despite this clear refusal, and in the absence of a warrant, valid consent, or probable cause justifying a warrantless search, Defendants nevertheless proceeded to forcibly remove Plaintiff from his vehicle and conduct an unlawful search. This search exceeded the lawful scope of the traffic stop and violated Plaintiff's clearly established Fourth Amendment right to be secure in his person and property against unreasonable searches and seizures. *See* Schneckloth v. Bustamonte, 412 U.S. 218, 219 (1973); Rodriguez v. United States, 575 U.S. 348, 354–57 (2015).

Plaintiff would show that Defendants lacked lawful authority to deprive Plaintiff of his liberty, to detain him beyond the scope of the initial stop, or to disregard his assertion of constitutional rights. Plaintiff was entitled to be secure in his person and property against unreasonable governmental intrusion. *Terry v. Ohio*, 392 U.S. 1, 9 (1968); *Brendlin v. California*, 551 U.S. 249, 255 (2007).

Plaintiff would further show that Defendant Navarro's declaration that Plaintiff had "no rights" reflects an arbitrary abuse of authority and a willful disregard for clearly established constitutional protections, and that such conduct directly contributed to the unlawful escalation of the encounter.

Plaintiff would show that the remaining Defendant officers observed Defendant Navarro's unconstitutional statements and conduct, had a reasonable opportunity to intervene or de-escalate, and nevertheless failed to do so, thereby ratifying and participating in the deprivation of Plaintiff's constitutional rights.

Plaintiff would show that Defendants' conduct deprived him of liberty and security of person without due process of law, in violation of the Fourteenth Amendment, and subjected him to an unreasonable seizure in violation of the Fourth Amendment.

As a direct and proximate result of Defendants' actions under color of law, Plaintiff suffered loss of liberty, physical pain, emotional distress, anxiety, humiliation, and other damages as described herein.

Accordingly, Defendants are liable to Plaintiff under 42 U.S.C. § 1983 for the deprivation of Plaintiff's constitutional rights under color of state law, either because they directly participated in the unlawful conduct or because they failed to intervene to prevent these violations.

## COUNT II
### 42 U.S.C § 1983 Excessive Force
### Eton Emetom against Matthew Lindemann, James Briggs, Tyler Navarro, James Polk, Trevone Johnson, Case Winkler, Bryson Mora

Plaintiff hereby incorporates all preceding paragraphs as if fully stated herein.

Plaintiff would show that the actions of each of the Defendants named in this Count on the date at issue in this Complaint deprived Emetom of his constitutional rights.

Plaintiff would show that at all times material hereto, the Defendants had a duty to avoid infliction of unjustified bodily injury to Plaintiff, to protect his bodily integrity and to not trample on his constitutional rights.

Plaintiff would show that the Deputy Defendants failed to act as objectively reasonable officers would have acted in the same or similar circumstances. That is, the Deputy Defendants, without legal or necessary justification or the need to do so, used excessive force as described above and caused severe and lasting physical injury to Plaintiff.

The individual Defendants named herein witnessed and directly participated in the conduct resulting in Plaintiff's injuries by applying unreasonable, unnecessary, and

excessive force to the Plaintiff while he was restrained by multiple law enforcement officers, and took no action to stop the wrongful and unconstitutional conduct of the other Defendants.

Plaintiff would show that the Deputy Defendants denied Plaintiff his right to be free from the use of excessive force in violation of the Fourth Amendment to the United States Constitution.

The actions by Deputy Defendants taken on that day were not objectively reasonable because they were designed to inflict excessive force in restraining an individual in a non-threatening situation that included several restraining deputies and other deputies who quickly arrived on scene.

The unjustified and excessive force used by the Deputy Defendants was not reasonable, nor was it necessary under the circumstances. Plaintiff was restrained by five deputies, assaulted by closed-fist strikes, knee jabs, a chokehold, and multiple uses of the taser. When Plaintiff was handcuffed and unconscious, he continued to be assaulted with no reasonable justification.

The force used by the Deputy Defendants was objectively unnecessary, excessive and unreasonable under the circumstances, as Plaintiff did not pose an immediate threat to the safety of the Deputy Defendants or others. The Deputy Defendants embarked on a willful, malicious, reckless and outrageous course of conduct that was intended to cause and, in fact did cause Plaintiff to suffer extreme and severe physical pain and injury, as well as mental and emotional distress, anxiety, terror and agony.

As a result of the conduct by the Deputy Defendants, Defendants are liable to Plaintiffs for his injuries and resulting damages, either because they were integral

participants in the use of excessive force or because they failed to intervene to prevent these violations.

Defendants Navarro, Briggs, and Polk used unnecessary, unreasonable, and excessive force against Plaintiff, causing physical and emotional pain.

Acting under the color of law, Defendants deprived Plaintiff of the rights and privileges secured to him by the Fourth Amendment to the United States Constitution and by other laws of the United States to be free from illegal and unreasonable seizures by the use of force.

Plaintiff brings this cause of action pursuant to 42 U.S.C. § 1983.

The amount of force used by Defendant Navarro, Briggs and Polk against the Plaintiff as described above, specifically but not limited to, when Defendants grabbed and pulled Plaintiff by the arm, neck and legs out of his property and slammed Plaintiff onto the cruiser, forced their elbow into Plaintiff's back area then dragged him to their police car, when Plaintiff was not actively resisting arrest, presenting a threat, or attempting to flee, was objectively unreasonable under the circumstances and inflicted unnecessary injury, pain, and suffering upon Plaintiff.

[A]lthough the right to make an arrest " 'necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it,' " the permissible degree of force depends on the severity of the crime at issue, whether the suspect posed a threat to the officer's safety, and whether the suspect was resisting arrest or attempting to flee. *Bush v. Strain*, 513 F.3d 492, 502 (5th Cir. 2008) (internal citations omitted).

Although officers may need to use "physical force ... to effectuate [a] suspect's compliance" when he refuses to comply with commands during a traffic stop, the officers still must assess "the relationship between the need and the amount of force used." *Newman v. Guedry*, 703 F.3d 757, 763 (5th Cir. 2012); quoting *Deville v. Marcantel*, 567 F.3d 156, 167 (5th Cir. 2009).

Where an individual's conduct amounts to mere "passive resistance," use of force is not justified. *Trammell v. Fruge*, 868 F.3d 332, 341 (5th Cir. 2017) (finding that the plaintiff pulling his arm away from officers amounted to only passive resistance and did not justify the use of force against plaintiff); *See Hanks v. Rogers*, 853 F.3d 738, 746 5th Cir. 2017) (determining the plaintiff's initial refusals to follow a police officer's instructions amounted to, "at most, passive resistance" and did not justify the officers use of a " 'half spear' takedown" against the plaintiff); *Deville v. Marcantel*, 567 F.3d 156, 168 (5th Cir. 2009) (the plaintiff's refusal to get out of her car before her husband arrived on
the scene constituted passive resistance).

A constitutional violation occurs when an officer tases, strikes, or **violently slams** an arrestee who is not actively resisting arrest. (emphasis added) *Darden v. City of Fort Worth, Texas,* 880 F.3d 722, 731 (5th Cir.).

Fifth Circuit case law makes clear that when an arrestee is not actively resisting arrest the degree of force an officer can employ is reduced. *Id.*

As Mr. Emetom was not actively resisting arrest, and at most his failure to get out of the car amounted to passive resistance, violently assaulting him and pulling him out his car, when Mr. Emetom was not actively resisting arrest, presenting a threat, or attempting to flee was objectively unreasonable and a use of excessive force in violation of his Constitutional rights under the Fourth Amendment.

A seizure is unreasonable if it results in (a) an injury, (b) that resulted directly and only from a use of force that was clearly excessive, and (c) the excessiveness was clearly unreasonable.

At no time did Mr. Emetom actively resist Defendant Navarro, as he complied with his order to exit the vehicle and then simply questioned why he was being told to step out of the vehicle and let him search his property during a routine traffic stop for failure to have a front license plate on the vehicle, which he had a plate affixed on the front window.

At no time did Mr. Emetom strike, punch, hit, push, or kick Defendant Navarro or any officers..

At no time did Mr. Emetom attempt to evade or flee from Defendant Navarro and never took any steps or actions indicating an attempt to flee.

Plaintiff was not threatening any officer or other person immediately prior to and at the time when Defendant Navarro assaulted and pulled Mr. Emetom out of his property. Plaintiff was simply standing stationary and asserted to reserve his rights at all times during the stop.

A reasonable officer would know that the use of force by violently assaulting, pulling him out his car, by the arms, neck and legs against his will is clearly excessive when engaging with citizens such as Plaintiff, who was not threatening any officer or other person, did not reach for his pocket or anywhere else where a weapon could have been held, was not attempting to evade or resist arrest at the time the force was used, and who the use of force was not warranted.

A reasonable officer in Defendant Navarro position would know that violently pulling Mr. Emetom out his car onto the by the arms, neck and legs when Plaintiff was not threatening any officer or other person, was unarmed, did not reach for his pocket or anywhere else where a weapon could have been held, was not attempting to evade or resist arrest at the time the force was used, and who the use of force was not warranted.

As a direct result of the force used against him by Defendants Navarro, Briggs, and Polk, Plaintiff has suffered physical injury, pain and mental anguish for which he sues herein. These injuries and emotions were not caused by any other means.

### <u>COUNT III</u>
**Assault and Battery**
***Eton Emetom against Matthew Lindemann, James Briggs, Tyler Navarro, James Polk, Trevone Johnson, Case Winkler, Bryson Mora***

Plaintiff hereby incorporates all preceding paragraphs as if fully stated herein.

On December 15, 2024 Deputy Defendants, while acting under color of law within the course and scope of their duties as law enforcement officials for the WCSO, without provocation, necessity or legal justification, Defendants assaulted and battered Plaintiff by forcibly grabbing him by his arms, legs, and shoulder, violently yanking him from his vehicle, and slamming him against and into a police cruiser, while he was restrained and not resisting. Defendants' use of force was unreasonable, excessive, and unnecessary, and directly caused Plaintiff's physical pain, emotional distress, and other injuries as described herein.

On information and belief, Plaintiff alleges that Defendant County, WCSO, and its Policymakers are responsible for implementing, maintaining, sanctioning, ratifying, and/or condoning a policy, custom, or practice under which the Deputy Defendants committed the aforementioned illegal and wrongful acts.

On information and belief, Plaintiff alleges that Defendant County, WCSO, and its Policymakers are each liable for the injuries and damages sustained by Plaintiff as they knew, or should have known, the customs, practices, policies would enable the unlawful and unconstitutional acts of the Deputy Defendants.

As a result of all Defendants' acts and omissions as described, Emetom suffered a traumatic assault by the Deputy Defendants that caused significant physical pain and lasting emotional distress.

Defendants each committed the aforementioned acts and omissions knowingly, willfully, maliciously and with the expressed intent to harm Mitchell and conscious or reckless disregard for the harm that resulted from the assault. By reason thereof, Plaintiff seeks punitive and exemplary damages from Defendants, in an amount according to proof at trial.

## COUNT IV
### Intentional Infliction of Emotional Distress
### Eton Emetom against Matthew Lindemann, James Briggs, Tyler Navarro, James Polk, Trevone Johnson, Case Winkler, Bryson Mora

Plaintiff hereby incorporates all preceding paragraphs as if fully stated herein.

Defendants intentionally and/or recklessly engaged in extreme and outrageous conduct that caused Plaintiffs severe emotional distress.

The intentional and/or reckless conduct of Defendants against Plaintiff was extreme and outrageous. The use of excessive force, together with Williamson County's policies and practices encouraging escalation, was extreme and unreasonable under the circumstances and caused Plaintiff significant emotional distress.

The conduct of Defendants did cause Plaintiff emotional distress by the use of excessive force and the national broadcast of Plaintiff's assault without Plaintiff's permission to air his image or likeness.

The emotional distress suffered by Plaintiff was severe. Plaintiff has developed extreme anxiety surrounding his assault and the public nature of the incident given Live PD's involvement. Furthermore, the distress and physical and mental injuries he suffered while being incarcerated for after this encounter was severe.

As a direct result of the illegal conduct of Defendants, Plaintiff has suffered injury and damages.

## COUNT V
### 42 U.S.C & 1983 Municipal Liability (Monell)
### Eton Emetom against Williamson County

Plaintiff hereby incorporates all preceding paragraphs as if fully stated herein.

Plaintiff would show that Defendant Williamson County, Texas is a municipal entity subject to suit under 42 U.S.C. § 1983, and that at all times relevant hereto, the Defendant officers were acting pursuant to the policies, customs, practices, and usages of Williamson County and within the scope of their employment with the Williamson County Sheriff's Office.

Plaintiff would show that the constitutional violations suffered by Plaintiff were not isolated incidents, but were the direct and proximate result of Williamson County's official policies, widespread customs, and deliberate indifference to the constitutional rights of citizens.

On and for some time prior to December 15, 2024 (and continuing to the present date) Defendants County, the WCSO, and Defendant Navarro deprived Plaintiff of the rights and liberties secured to him by the Fourth and Fourteenth Amendments to the United States Constitution, in that said Defendants and their supervising, and managerial employees, agents, and representatives, acting with gross negligence and with reckless and deliberate indifference to the rights and liberties of the public in general, knowingly maintained, enforced and applied an official policy recognized by the County and the WCSO.

The Deputy Defendants were acting under color of law.

The Deputy Defendants acted pursuant to an expressly adopted official policy or a longstanding practice or custom of the Defendant County.

On information and belief, none of the Deputy Defendants or Defendant Navarro were terminated or disciplined for the unnecessary and unjustified assault on Plaintiff.

Defendant County, together with Defendant Lindemann and other Policymakers, including the County Commissioners and supervisors maintained, inter alia, the following unconstitutional customs, practices, and policies:

a. Using excessive force;

b. Providing inadequate training regarding the use of force;

c. Providing inadequate training regarding the de-escalation of force;

d. Lower the amount of training required to leave the training academy;

e. Employing and retaining as law enforcement officers those who Defendant County and Defendant WCSO, at all times material herein, knew or reasonably should have known had dangerous propensities for abusing their authority and for mistreating citizens through assault and excessive use of force;

f. Inadequately supervising, training, controlling, assigning and disciplining law enforcement officers who Defendants each knew, or in the exercise of reasonable care, should have known had the aforementioned propensities and character traits;

g. Employing and retaining officers who have been known to be abusive;

h. Maintaining grossly inadequate procedures for reporting, supervising, investigating, reviewing, disciplining and controlling the intentional misconduct by those who are law enforcement officers;

i. Failing to adequately discipline law enforcement officers for the above-referenced categories of misconduct and discipline that is so slight that is tantamount to encourage misconduct;

j. Rewarding deputies with steakhouse gift cards when a use of force incident occurred;

k. Rewarding deputies with titles such as "Wilco Badass" and featuring them on popular social media platforms and posts;

l. Rewarding deputies who used force with appearances on Live PD and the notoriety that came with such national TV appearances;

m. Having and maintaining an unconstitutional custom and practice of using excessive Force and covering up police misconduct. These customs and practices by the County, Lindemann and the WCSO were condoned by Defendants in deliberate indifference to the safety and rights of civilians, including the Plaintiff.

By reason of the aforementioned policies and practices of Defendants County, the WCSO and their Policymakers, Plaintiff experienced severe pain and suffering for which he is

entitled to recover damages. The aforementioned acts and omissions also caused Plaintiff's pain and suffering

Plaintiff would show that Williamson County maintained a custom and practice of escalating routine traffic stops, disregarding citizens' assertions of constitutional rights, and authorizing or tolerating the use of force in non-threatening situations, including where individuals verbally complied, refused consent to search, or requested supervisory assistance.

Plaintiff would further show that Williamson County maintained a custom of failing to intervene or de-escalate, whereby deputies, including supervisors, routinely observed unconstitutional conduct by fellow officers and failed to correct, restrain, or stop such conduct, thereby ratifying and approving constitutional violations in real time.

Plaintiff would show that Williamson County failed to adequately train and supervise its deputies, including Defendant Tyler Navarro, regarding fundamental constitutional principles governing searches, seizures, detention, use of force, and citizens' rights during traffic stops. This failure included inadequate instruction on the Fourth and Fourteenth Amendments and the limits of police authority.

Plaintiff would further show that during a criminal evidentiary hearing arising from the same incident, Defendant Navarro admitted under oath that he was not familiar with the Fourth or Fourteenth Amendments, despite acknowledging that he took an oath to uphold the Constitution. Plaintiff would show that deploying an officer lacking basic constitutional knowledge into the field reflects a systemic training failure attributable to Williamson County.

Plaintiff would show that Williamson County further failed to supervise Defendant Navarro by allowing his unconstitutional conduct to continue unchecked even after a

supervising officer, Defendant James Briggs, arrived on scene. Rather than de-escalating or correcting Defendant Navarro's conduct, Defendant Briggs ratified and escalated the encounter, reflecting a policy or custom of supervisory approval of unconstitutional actions.

Plaintiff would show that Williamson County had actual notice of similar unconstitutional conduct by its deputies prior to Plaintiff's encounter, through prior federal civil rights lawsuits, settlements, public reporting, and investigations involving excessive force, unlawful escalation, and failure to discipline or retrain deputies. Despite this notice, Williamson County failed to implement meaningful corrective measures.

Plaintiff would show that Williamson County's failures were not the result of mere negligence, but constituted deliberate indifference to the known and obvious risk that deputies would violate citizens' constitutional rights during routine encounters.

Plaintiff would show that Williamson County's policies, customs, practices, and failures to train and supervise were the moving force behind the violations of Plaintiff's rights, including unlawful detention, unreasonable seizure, excessive force, and deprivation of liberty without due process of law.

Plaintiff would further show that, under Texas law, the Sheriff of Williamson County is the final policymaker for law enforcement matters, and that the unconstitutional customs and practices described herein were either implemented, tolerated, or ratified by Williamson County through its policymakers.

As a direct and proximate result of Williamson County's unconstitutional policies, customs, and deliberate indifference, Plaintiff suffered loss of liberty, physical pain, emotional distress, humiliation, and other damages as described herein.

Accordingly, Defendant Williamson County, Texas is liable to Plaintiff under 42 U.S.C. § 1983 pursuant to Monell v. Department of Social Services, for the constitutional violations committed by its deputies.

Defendants County, Navarro, and the WCSO together with various other officials, whether named or unnamed, had either actual or constructive knowledge of the different policies, practices, and customs alleged in the paragraphs above. Despite having knowledge as stated above, these Defendants encouraged, condoned, tolerated and through actions and inactions ratified such policies. Said Defendants also acted with deliberate indifference to both the foreseeable effects and consequences of these policies and to the constitutional rights of Plaintiff, and other individuals similarly situated.

By perpetuating, sanctioning, tolerating, and ratifying the outrageous conduct and other wrongful acts, Defendants County, Navarro, and the WCSO acted with an intentional, reckless, callous disregard for the well-being of Plaintiff and his constitutional and human rights. Defendants' actions were willful, wanton, malicious, fraudulent, and extremely offensive and unconscionable to any person of normal sensibilities.

Furthermore, the policies, practices, and customs implemented, maintained and still tolerated by Defendants County, Lindemann, and the WCSO were affirmatively linked to, and were a significantly influential force behind the Plaintiff's injuries.

## COUNT VI
### 42 U.S.C & 1983 Municipal Liability (Monell)
### Eton Emetom against Williamson County
### Failure to Train

Plaintiff hereby incorporates all preceding paragraphs as if fully stated herein.

Williamson County is liable for all damages suffered by Plaintiff pursuant to *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978) and 42 U.S.C. § 1983 based on an official

policy or custom of the WCSO of which the County Commissioners and Defendant Lindemann all had actual or constructive knowledge that was a moving force behind the constitutional violations alleged herein.

The conduct of the Deputy Defendants as set forth in the preceding paragraphs evinces the excessive and unreasonable use of force in violation of Plaintiff's constitutional rights.

The conduct set forth supra evinces a custom of using excessive or improper force, a lack of policies and training instructing deputies on the appropriate manner in which to handle individuals through non-lethal tactics, including the use of tasers, strikes to the head and body of detainees, knee thrusts to the face, head and body, headlocks/chokeholds and restricting the breathing of detainees when no immediate risk of harm is posed to deputies or the public.

With respect to the claims made the basis of this lawsuit, the County and the WCSO failed to adequately train, supervise or discipline its employees regarding the unnecessary use of excessive force. The failure to train, supervise or discipline its employees in a relevant respect reflects a deliberate indifference on the County, WCSO, Defendant Lindemann to the rights of the City's inhabitants and is actionable under 42 U.S.C. § 1983.

Defendant County and Defendant Lindemann developed and maintained a policy of deficient training of its police force in the appropriate use of force against suspects who are not resisting. The County's training is designed and implemented by Defendant Lindemann and the County to act in this regard.

The County and Lindemann failure to provide adequate training to its sheriff deputies regarding the use of excessive force reflect deliberate indifference by the Policymakers and reckless and conscious disregard for the obvious risk that officers would use excessive on citizens and made the violation of Plaintiff's constitutional rights, including his severe injuries, a reasonable probability.

Deputy Defendants were acting under the color of law and acting pursuant to customs, practices and policies of the County and the WCSO in regards to the use of excessive force as authorized and/or ratified by the Policymakers, specifically Defendant Lindemann and the County when they deprived Mitchell of rights and privileges secured to him by the Fourth Amendment to the United States Constitution and by other laws of the United States, by the County failing to provide proper training in the use of excessive force in violation of 42 U.S.C. § 1983 and related provisions of federal law and in violation of the above cited constitutional provisions.

On information and belief, Defendant County, the WCSO, and Defendant Lindemann, acting through official policies, practices, and customs, and with deliberate, callous, and conscious indifference to the constitutional rights of Plaintiff, failed to implement and/or enforce the policies, procedures; and practices necessary to provide constitutionally adequate protection and assistance to Plaintiff and implemented policies, procedures, and practices which actually interfered with or prevented Plaintiff from receiving the protection, assistance and care he deserved.

The WCSO academy changed academic standards without approval to make it easier for some cadets to graduate from the academy and begin patrol. For instance, the following conduct, policies, and customs, *inter alia*, by Defendants violated Mitchell's constitutional rights:

A. The inadequacy of WCSO's policies, training, supervision or discipline relating to the use of excessive force;

B. The inadequacy of WCSO's policies, training, supervision or discipline relating to the use of non-lethal force and tactics, including the use of closed-first strikes, repeated use of tasers, use of headlocks/chokeholds, and kneeling on suspects;

C. The adoption of completely subjective continuum of force policy that can be expressly avoided and which leaves the use of excessive force exclusively to the unchecked discretion of officers on the scene;

D. The adoption of a policy that allows officers to use the degree of force that the officer feels brings the situation quickly under control as per his or her individual judgment even if that method is excessive force;

E. Lack of training in regard to effective communication with citizens while giving them commands and determining their compliance.

F. Using excessive force against Mitchell although he caused no immediate threat; and

G. Using excessive force against Mitchell while he was detained and not resisting.

The County's failure to properly train, supervise and discipline its police officers regarding the use of force was the proximate cause of the violation of Mitchell's constitutional rights.

**COUNT VII**
***42 U.S.C & 1983 Municipal Liability (Monell)***
***Eton Emetom against Williamson County***
***Failure to Supervise and/or Discipline***

Plaintiff hereby incorporates all preceding paragraphs as if fully stated herein.

Plaintiff would show that Defendant Williamson County, Texas is a municipal entity subject to suit under 42 U.S.C. § 1983, and that at all times relevant hereto, the Defendant

officers were acting under color of state law, pursuant to the customs, policies, practices, and usages of Williamson County, and within the scope of their employment with the Williamson County Sheriff's Office.

*A municipality may be held liable under § 1983 for failure to supervise or discipline where the plaintiff shows that the municipality failed to supervise its officers, that the failure was causally connected to the constitutional violation, and that the failure amounted to deliberate indifference. Porter v. Epps, 659 F.3d 440, 446 (5th Cir. 2011); Piotrowski v. City of Houston, 237 F.3d 567, 582 (5th Cir. 2001). Supervisory officers present at the scene who fail to intervene may also be held liable. Hale v. Townley, 45 F.3d 914, 919 (5th Cir. 1995). A municipality's failure to investigate or discipline officers following constitutional violations may further support a finding of ratification. Peterson v. City of Fort Worth, 588 F.3d 838, 848 (5th Cir. 2009); Grandstaff v. City of Borger, 767 F.2d 161, 170–71 (5th Cir. 1985).*

Plaintiff would show that Williamson County had a duty to supervise and discipline its deputies, including supervisory personnel, to ensure compliance with constitutional requirements and to prevent the use of unreasonable force, unlawful seizures, and arbitrary abuses of authority.

On Plaintiff's governmental liability claim against the County for failing to supervise and/or discipline its officers for prior violations and the resulting lack of supervision:

The County and Defendant Lindemann failed to adequately supervise and/or discipline its employees in handling usual and recurring situations with which they deal;

The County and Defendant Lindemann were deliberately indifferent to the need to supervise and/or discipline its officers and/or employees adequately;

The failure to adequately supervise and/or discipline its officers proximately caused the deprivation of Mitchell's constitutional rights; and

The County and Defendant Lindemann failed to adequately supervise and/or discipline the Deputy Defendants for assaulting Mitchell for no lawful reason, resulting in the severe injuries to Mitchell.

Despite having knowledge of the Deputy Defendants' violations of the policies and other best police practices as described above, the County, WCSO, and Defendant Lindemann failed and/or refused to adequately discipline the Deputy Defendants. The County's Policymakers were well aware of the out-of-control behavior of the Deputy Defendants but have failed to take any actions. The County's failure to adequately supervise and/or discipline its deputies was therefore the moving force behind Plaintiff's damages.

Plaintiff would show that Defendant James Briggs, a supervisory officer, was called to the scene for the express purpose of de-escalating the encounter between Plaintiff and Defendant Tyler Navarro. Rather than de-escalating the situation, Defendant Briggs escalated the encounter, threatened force, participated in Plaintiff's forcible removal from his vehicle, and ratified Defendant Navarro's unconstitutional conduct.

Plaintiff would show that Williamson County failed to adequately supervise Defendant Briggs by permitting him to exercise supervisory authority without intervening to stop unconstitutional conduct and without ensuring that he fulfilled his duty to de-escalate and protect citizens' rights during routine encounters.

Plaintiff would further show that Williamson County failed to discipline Defendant Briggs, Defendant Navarro, and other involved deputies for their conduct during the incident at issue, thereby signaling approval of unconstitutional actions and reinforcing a custom of escalation and non-accountability.

Plaintiff would show that after the incident, he filed an internal affairs complaint with Williamson County seeking investigation and accountability. Rather than conducting a meaningful, independent investigation, Williamson County failed to take corrective action and instead directed Plaintiff's complaint back to Defendant Navarro, the very officer whose conduct was the subject of the complaint.

Plaintiff would show that routing a civilian complaint to the accused officer, rather than to an independent investigative authority, constitutes a failure to discipline and a ratification of misconduct, and reflects a municipal practice of discouraging accountability and shielding deputies from consequences.

Plaintiff would show that Williamson County's failures to supervise and discipline were not isolated or inadvertent, but were consistent with a broader pattern of tolerating unconstitutional conduct by deputies, including failure to intervene, escalation rather than de-escalation, and disregard for citizens' constitutional rights.

Plaintiff would show that Williamson County's failure to supervise and discipline its deputies, including supervisory officers, amounted to deliberate indifference to the known and obvious risk that constitutional violations would occur.

Plaintiff would further show that these failures were the moving force behind the violations of Plaintiff's constitutional rights, including unlawful seizure, excessive force, deprivation of liberty, and emotional distress.

As a direct and proximate result of Williamson County's unconstitutional customs, policies, and deliberate indifference in supervision and discipline, Plaintiff suffered loss

of liberty, physical pain, emotional distress, humiliation, and other damages as described herein.

Accordingly, Defendant Williamson County, Texas is liable to Plaintiff under 42 U.S.C. § 1983 pursuant to Monell v. Department of Social Services for failing to supervise and discipline its deputies, thereby causing the deprivation of Plaintiff's constitutional rights.

## COUNT VIII
### 42 U.S.C & 1983 Unlawful Search and Seizure
### Eton Emetom against Matthew Lindemann, James Briggs, Tyler Navarro, James Polk, Trevone Johnson, Case Winkler, Bryson Mora

Plaintiff hereby incorporates all preceding paragraphs as if fully stated herein.

Plaintiff would show that at all times material hereto, Defendants were acting under color of state law and deprived Plaintiff of rights secured by the Fourth Amendment, including the right to be secure in his person and property against unreasonable searches and seizures.

Plaintiff would show that during the traffic stop at issue, Plaintiff expressly and unequivocally informed Defendants multiple times that he did not consent to any searches of his person or vehicle without a warrant.

Plaintiff would further show that despite Plaintiff's repeated refusal of consent, Defendants forcibly removed Plaintiff from his vehicle and conducted a search and seizure without a warrant, without valid consent, and without probable cause or exigent circumstances.

Plaintiff would show that Defendant Tyler Navarro told Plaintiff that he "did not have any rights," and asserted authority to search and seize Plaintiff despite Plaintiff's express refusal of consent and the absence of lawful justification.

Plaintiff would show that consent to search must be freely and voluntarily given, and that a search conducted after a clear refusal of consent violates the Fourth Amendment. *See* Schneckloth v. Bustamonte, 412 U.S. 218, 222 (1973).

Plaintiff would further show that Defendants unlawfully expanded the scope and duration of the traffic stop to conduct a search unrelated to the original purpose of the stop, in violation of clearly established law. *See* Rodriguez v. United States, 575 U.S. 348, 354–57 (2015).

Plaintiff would show that the forcible removal of Plaintiff from his vehicle and the resulting search constituted an unreasonable seizure, as Plaintiff was entitled to remain secure in his person and property absent lawful justification. *See* Brendlin v. California, 551 U.S. 249, 255 (2007); Terry v. Ohio, 392 U.S. 1, 9 (1968).

Plaintiff would show that Defendants' actions were not objectively reasonable, as a reasonable officer would have honored Plaintiff's refusal of consent and refrained from conducting a search absent a warrant or a recognized exception to the warrant requirement.

As a direct and proximate result of Defendants' unlawful search and seizure, Plaintiff suffered loss of liberty, emotional distress, anxiety, humiliation, and other damages as described herein.

Accordingly, Defendants are liable to Plaintiff under 42 U.S.C. § 1983 for unlawful search and seizure in violation of the Fourth Amendment.

## COUNT IX
### *42 U.S.C & 1983 Unlawful Detention and False Arrest*
### *Eton Emetom against Matthew Lindemann, James Briggs, Tyler Navarro, James Polk, Trevone Johnson, Case Winkler, Bryson Mora*

Plaintiff hereby incorporates all preceding paragraphs as if fully stated herein.

Plaintiff would show that at all times material hereto, Defendants were acting under color of state law and within the course and scope of their employment as law-enforcement officers.

Plaintiff would show that Defendants detained and arrested Plaintiff without probable cause, thereby depriving him of his rights secured by the Fourth and Fourteenth Amendments to the United States Constitution.

Plaintiff would show that Defendant Tyler Navarro asserted that Plaintiff was subject to a firearm restriction from Harris County and was therefore prohibited from possessing a firearm, and relied on this assertion as justification for Plaintiff's arrest and continued detention.

Plaintiff would further show that this assertion was false, and that while Plaintiff was being booked, Defendants learned that no such firearm restriction existed and that Plaintiff was lawfully permitted to possess a firearm.

Plaintiff would show that despite learning that the alleged firearm restriction was incorrect, Defendants continued to jail and detain Plaintiff, offering shifting and unsupported justifications rather than releasing Plaintiff once the factual basis for the arrest was disproven.

Plaintiff would show that as a result of Defendants' unlawful actions, he was taken into custody and transported to jail, where he was deprived of his liberty for approximately 30 hours. During this time, Defendants also seized Plaintiff's personal property, including his vehicle, which was towed and impounded without lawful justification, notice, or a meaningful opportunity to contest the seizure. Plaintiff was thereby deprived of both liberty and property interests without due process of law, in violation of the Fourteenth Amendment, as Defendants exercised arbitrary authority to incarcerate Plaintiff and dispossess him of his property absent lawful procedures or safeguards.

Plaintiff would show that an arrest and continued detention without probable cause constitutes an unreasonable seizure under the Fourth Amendment. *See* Beck v. Ohio, 379 U.S. 89, 91 (1964); Manuel v. City of Joliet, 580 U.S. 357, 367–69 (2017).

Plaintiff would show that Defendants' continued detention of Plaintiff after learning that the alleged firearm restriction was false violated clearly established law, as officers may not continue to hold an individual once probable cause dissipates. *See* United States v. Ortiz, 781 F.3d 221, 228 (5th Cir. 2015).

Plaintiff would show that Defendants' actions were not objectively reasonable, as a reasonable officer would have verified the alleged restriction prior to arrest and would have immediately released Plaintiff upon learning that no such restriction existed.

As a direct and proximate result of Defendants' unlawful detention and false arrest, Plaintiff suffered loss of liberty, emotional distress, humiliation, and other damages as described herein.

Accordingly, Defendants are liable to Plaintiff under 42 U.S.C. § 1983 for unlawful detention and false arrest in violation of the Fourth and Fourteenth Amendments.

**COUNT X**
*Due Process Violation (Fourteenth Amendment; § 1983)*
**Eton Emetom against Matthew Lindemann, James Briggs, Tyler Navarro, James Polk, Trevone Johnson, Case Winkler, Bryson Mora**

Plaintiff hereby incorporates all preceding paragraphs as if fully stated herein.

Plaintiff would show that, at all times material hereto, Defendants were acting under color of state law and within the course and scope of their employment as law-enforcement officers for Williamson County.

Plaintiff would show that the Fourteenth Amendment forbids states and state actors from depriving any person of life, liberty, or property without due process of law, and guarantees fundamental fairness in governmental proceedings. See Mathews v. Eldridge, 424 U.S. 319, 332–33 (1976).

Plaintiff would show that Defendant Tyler Navarro deprived Plaintiff of his constitutional rights by asserting arbitrary authority, including telling Plaintiff that he "did not have any rights" and that Defendant did not need Plaintiff's consent to search him, notwithstanding clearly established constitutional protections governing searches, seizures, and detention.

Plaintiff would show that Defendants deprived Plaintiff of liberty and property without due process of law by unlawfully arresting him, detaining him for approximately 30 hours, and coercing him into signing citations, without lawful justification, adequate procedural safeguards, or a fair opportunity to contest the deprivation.

Plaintiff would show that pretrial detention and continued custody without a lawful basis violate the Due Process Clause when they are not supported by probable cause or are maintained after the basis for detention dissipates. See Manuel v. City of Joliet, 580 U.S. 357, 367–69 (2017); County of Riverside v. McLaughlin, 500 U.S. 44, 56 (1991).

Plaintiff would further show that coercing a citizen into signing citations or legal documents while unlawfully detained and under threat of continued custody undermines the fundamental fairness required by the Fourteenth Amendment. See Zinermon v. Burch, 494 U.S. 113, 125–26 (1990) (due process protects against arbitrary exercises of government power).

Plaintiff would show that Defendants' conduct was arbitrary, conscience-shocking, and incompatible with the concept of ordered liberty, as it involved the misuse of police authority to deprive Plaintiff of liberty and property without fair procedures or lawful justification. See County of Sacramento v. Lewis, 523 U.S. 833, 846–47 (1998).

Plaintiff would show that the deprivation of Plaintiff's liberty and property interests was not accompanied by adequate procedural protections, notice, or a meaningful opportunity to be heard, and therefore violated Plaintiff's rights under the Fourteenth Amendment.

As a direct and proximate result of Defendants' due process violations, Plaintiff suffered loss of liberty, emotional distress, humiliation, anxiety, and other damages as described herein.

Accordingly, Defendants are liable to Plaintiff under 42 U.S.C. § 1983 for violating Plaintiff's Fourteenth Amendment right to due process of law.

## VI. DAMAGES

Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs as if fully repeated herein. Plaintiff's injuries were a foreseeable event. Those injuries were directly and proximately caused by Defendant's Briggs, Navarro, and Polk use of excessive and unreasonable force against Plaintiff and the deliberate indifference he showed toward Plaintiff as Defendants Johnson, Winkler, and Mora stood there and watch as they failed to de-escalate the situation.

As a result, Plaintiff is entitled to recover all actual damages allowed by law.

Plaintiff contends Defendant Navarro's conduct constitutes malice, evil intent, or reckless or callous indifference to Plaintiff's constitutionally protected rights. Thus, Plaintiff is entitled to punitive damages.

As a direct and proximate result of the occurrence which made the basis of this lawsuit, Plaintiff was forced to suffer:

a. Physical injuries;

b. Physical pain and suffering;

c. Emotional distress, torment, and mental anguish; and

d. Retaliatory harassment and loss of trust in law enforcement

Pursuant to 42 U.S.C. § 1983 and 1988, Plaintiff seeks to recover, and hereby requests the award of punitive damages, reasonable attorney's fees, and costs of court.

## VII. RELIEF REQUESTED

Plaintiff respectfully requests the following relief:

1. Compensatory damages against all Defendants in the amount of $500,000 for physical injuries, emotional distress, unlawful detention, and violation of constitutional rights;

2. Punitive damages against Defendants Tyler Navarro and James Briggs for their willful and reckless disregard of Plaintiff's constitutional rights;

3. A declaratory judgment that Defendants violated Plaintiff's rights under the U.S. Constitution;

4. Injunctive relief requiring Williamson County to adopt and enforce policies that protect the public from unconstitutional searches, excessive force, retaliatory conduct, and failure to investigate complaints properly;

5. Reasonable attorney's fees and litigation costs under 42 U.S.C. § 1988;

6. Such other and further relief as the Court deems just and proper.

## VIII. JURY DEMAND

Plaintiff hereby request  a trial by jury on all issues so triable.

*Respectfully submitted,*

*Eton Emetom*

*9601 Dalewood Dr. Unit A, Austin TX 78729*

*[Etonemetom@gmail.com]*

# EXHIBIT A
### Copy of Body-Cam Transcript from December 15, 2024







# EXHIBIT B
## Booking Photograph of Plaintiff Eton Emetom (December 15, 2024)

 **BustedNewspaper Williamson County TX**

Dec 16, 2024 ·



bustednewspaper.com
## Emeton, Eaton Chizuruoke Mugshot | 2024-12-16 Williamson County, Texas Arrest

Emeton, Eaton Chizuruoke Mugshot | 2024-12-16
Williamson County, Texas Arrest

# EXHIBIT C
# Internal Affairs Complaint

**EXHIBIT B**

Internal Affairs Complaint submitted

508 S. Rock St.
Georgetown, TX 78626
512-943-1300
www.wilco.org

**Williamson County Sheriff's Office**

## Quality Assurance Form

| Last Name: | First Name: | MI: | Home Phone #: | Cell Phone #: |
|---|---|---|---|---|
| Emetom | Eton | C | | 832-815-8496 |

| Mailing Address: | City: | State: | Zip: | Email Address: |
|---|---|---|---|---|
| 9601 Dalewood Dr A | Austin | TX | 78729 | Etonemetom@gmail.com |

| Date of Incident: | Location of Incident: |
|---|---|
| 12-15-2024/ 01-05 2025 | 13749 N Hwy 183, Austin, TX 78724 |

| Time of Incident: | Report Number of Incident: | Citation Number: |
|---|---|---|
| 11:30 pm - 12:00 Am | | PF24-06743 E0727924 PF24-06744 |

| Name of Involved Employees (if known) | Employee # (if known) | How Involved? (Committed act or witness) |
|---|---|---|
| 1. Tyler Navarro | 15868 | Violated my Civil Rights |
| 2. Sergent Briggs | 11792 | Violated my Civil Rights |
| 3. Williamson County Police | | |
| 4. | | |
| 5. | | |

### Statement

Clearly and chronologically state what happened, ensuring that you articulate the conduct, facts and evidence in support of your allegation(s). Please sign all pages that bear your statement and initial all corrections. Please include any available witness information including addresses and phone numbers.

Officers T. Navarro #15868, and Sergent Briggs #11792 violated my civil Rights, deprived me of my rights, under title U.S.C § 1983, assaulted mad battery using excessive and unlawful physical force against me, without proper due process and procedures, and conducted an unlawful search to my private property without any warrant issued. → Continue

Filing a false complaint against a police employee is a violation of the Texas Penal Code, Section 37.02. If a person knowingly and intentionally makes a false statement under oath or swears to the truth of a false statement previously made under oath, a person may be found guilty and punished by a fine up to $4,000, confinement in jail up to one year, or by both fine and imprisonment.

I have read each page of this statement consisting of ___ page. Corrections, if any bear my initials. I certify the facts contained herein are true and correct.

Eton Emetom-UCC1-308
**Signature**    All RIGHTS RESERVED

02/06/2025
**Date**

Questions or Comments? Call Internal Affairs at 512-943-1360 or 512-943-1398

HQ.054.22RR                                    Rev. 02/18/2022

# EXHIBIT D
# Internal Affairs Complaint Letter

EXHIBIT B pt 2.

**Subject:** Complaint Against Officer Tyler Navarro for Harassment and Violation of Constitutional Rights

**To:** Internal Affairs Department
**Williamson County Sheriff's Office**

**Date:** 02/06/2625

**From:** Eton Emetom

**Dear Internal Affairs,**

I Eton Emetom the living man, beneficiary and trustee writing to formally file a complaint against Officer Tyler Navarro of the Williamson County Sheriff's Office for ongoing harassment, abuse of power, and violations of my constitutional rights. Below, I outline the incidents that demonstrate a troubling pattern of misconduct:

1. **Incident on December 15, 2024:**

   • On this date, Officer Navarro conducted an **illegal search of my private property** without a warrant or my consent.

   • During this encounter, I was subjected to **excessive force, assault, false arrest, and false imprisonment,** violating my rights under the Fourth and Fourteenth Amendments of the U.S. Constitution.

2. **Improper Complaint Handling:**

   • Following this incident, I attempted to file a formal complaint with the Williamson County Sheriff's Office. Instead of being directed to an impartial officer or supervisor, my complaint was transferred to Officer Navarro himself—the individual responsible for the violation.

   • This mishandling of my complaint raises concerns about fairness and accountability within the department.

3. **Harassment and Retaliation:**

   • Since filing the complaint, Officer Navarro has engaged in **harassment** by frequently appearing in my neighborhood and targeting me.

   • On January 2, 2025, Officer Navarro stopped me on my street and threatened to arrest me if I did not sign a citation. Under duress, I signed the document but did so while reserving my rights under UCC 1-308.

---

These actions constitute an abuse of power and retaliation against me for exercising my rights to file a complaint. Officer Navarro's behavior has caused me significant emotional distress and has left me feeling unsafe in my own community.

**Request for Action**

I respectfully request that Internal Affairs conduct a thorough and impartial investigation into Officer Navarro's actions, including:

1. His conduct during the incident on December 15, 2024.

2. His involvement in mishandling my initial complaint.

3. His ongoing harassment and retaliatory actions in my neighborhood.

Furthermore, I request to be informed about the steps being taken to address this matter and the outcome

Respectfully

Eton Emetom    UCC1-308
All Rights Reserved